UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| John Martin, : | |
|     Plaintiff, : | |
| : | |
|     v. : | No. 2:07-CV-260 |
| : | |
| Town of Brattleboro, : | |
| Audrey Garfield, Dora Bouboulis, : | |
| Barbara Sondag, and Richard Garant, : | |
|     Defendants. : | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 25)

John Martin brings suit under 42 U.S.C. § 1983 against the Town of Brattleboro, Brattleboro's Town Manager, and three members of the Brattleboro Selectboard. Martin claims that he was deprived of his due process rights when the Brattleboro Selectboard terminated him from his position as Brattleboro's Chief of Police. According to Martin, the termination was orchestrated by members of the Selectboard to advance their personal agendas against him. Defendant Dora Bouboulis, a member of the Selectboard at the time, moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), based on legislative immunity.

I.  Factual Background

For the purpose of the pending motion, the facts alleged in the Complaint will be accepted as true. The facts were set forth in the Court's prior Report and Recommendation and are largely repeated here. (Paper 28).

A.  Martin's Employment

John Martin was hired as a Brattleboro police officer in 1976. He rose through the ranks becoming Brattleboro's Chief of Police in 2001. In April 2007, Barbara Sondag, Brattleboro's acting Town Manager, conducted an evaluation of Martin's job performance. The evaluation was positive but did not include the comments Martin made to Sondag during the evaluation. Sondag later testified under oath to the Selectboard that Martin never made these comments.

B. Bias Against Martin

During the same time period, Sondag was applying for the permanent Town Manager position, a position appointed by the Selectboard. Sondag asked Brattleboro's department heads to support her application, but Martin declined, as he felt that it would be inappropriate to take a position. All other department heads supported Sondag.

Audrey Garfield was the chair of the Brattleboro

Selectboard at the time. Martin claims that Garfield had a personal agenda against him. Garfield spoke out publicly against Martin, advocating for his termination. To this end, Garfield made false allegations against Martin about using the town credit card for personal expenses. Martin claims that Garfield's political allies on the Selectboard, Bouboulis and Garant, knew or should have known that Garfield's statements were untrue. (Comp. ¶ 13).

C. Consultant Report

Shortly after Martin declined to support Sondag and while Garfield campaigned for Martin's termination, Sondag commissioned a consultant to generate a report on the state of the Brattleboro Police Department. The consultant had no experience in evaluating police departments or in law enforcement. The consultant met with union officials and Sondag prior to evaluating the department and deliberately excluded Martin from that meeting. Martin did not have an opportunity to meet with the consultant before the evaluation began.

Sondag instructed the consultant on how the evaluation should be performed. Martin believes that Sondag, at Garfield's insistence, sought a negative report from the

consultant. (Compl. ¶ 16). Before the consultant finished the report, Sondag, Garfield, Bouboulis, and Garant decided that Martin would be terminated if he did not retire. When the Town learned that the consultant's report would be made public, it was revised.

### D. Tazer incident

In July 2007 Brattleboro police used Tazer guns on a group of demonstrators. Martin was not present at the incident. The Town conducted a "sham" investigation of the Tazer incident. During the investigation Sondag refused to speak to any witness who would support Martin and interfered with the on-going internal department incident investigation. Before the investigation was complete, Sondag informed Martin that he would be disciplined. Martin was suspended for one day for not having a plan to deal with the protesters even though he gave specific direction to a supervising officer the previous day. None of the officers involved in the incident was disciplined. Martin appealed the discipline, but a decision was never reached on the appeal. This was the only disciplinary action or written criticism against Martin between April 2007 and October 2007.

In August 2007, Sondag told Martin that he must resign or he would be fired.  Martin believes that Garfield, Bouboulis, and Garant instructed Sondag to deliver this ultimatum.  (Comp. ¶ 22).  Martin refused to resign.

E. Recommendation Hearing

In September 2007, Sondag notified Martin that she would hold a hearing to decide whether to recommend his termination.  Sondag told Martin that he would be able to respond to the charges against him; however, at the hearing Sondag never allowed him that opportunity.  After the hearing Sondag recommended to the Selectboard that Martin be dismissed.

F. Selectboard Hearing

Following Sondag's recommendation, the Selectboard held a hearing to decide Martin's fate.  The Selectboard never listened to the recording of Sondag's earlier recommendation hearing.  Martin wanted access to that recording but it was not provided to him until the day before the Selectboard meeting, impairing his ability to defend himself at the meeting.

Martin believes that Garfield, Bouboulis, and Garant were biased against him before ever listening to the

evidence.  (Comp. ¶ 25).  After the hearing, they voted to terminate Martin.  Martin was terminated on October 31, 2007.  Martin alleges that he was terminated because of the defendants' personal malice.

Martin brings this action under 42 U.S.C. § 1983, and alleges violations of his procedural and substantive due process rights. The Court previously recommended that the procedural due process claims against Sontag be dismissed and that the substantive due process claim remain.  (Paper 28).

II.  Discussion

Local legislators, such as Bouboulis, enjoy absolute immunity for all actions taken within the sphere of legitimate legislative activity.  Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998).  Actions which are legislative in nature cannot be inhibited by judicial interference.  Id. at 52. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. at 54.  Therefore, the Court must determine whether under the present state of the pleadings Bouboulis's actions were legislative in nature.

Martin insinuates that Bouboulis conspired to produce a

negative evaluation of him and a "sham" investigation of the Tazer incident.  Martin also alleges that Bouboulis conspired to deliver an ultimatum to him; retire or be fired.

Acts which are outside the sphere of legitimate legislative activity do not enjoy immunity.  In <u>Berlickij v. Town of Castleton</u>, this Court held that conducting secret meetings to deny persons access to a public forum were outside the sphere.  248 F. Supp. 2d 335, 343 (D. Vt. 2003).  Similarly, Bouboulis is alleged to have conspired, outside of any government meeting, to deprive Martin of a fair hearing on his termination.  As in <u>Berlickij</u>, these actions are not protected by legislative immunity.

Martin also claims that Bouboulis voted to terminate him based on personal malice.  Legitimate legislative activity does not forfeit the privilege merely because it stems from dishonest or vindictive motives.  <u>Tenney v. Brandhove</u>, 341 U.S. 367, 377 (1951).  Therefore, Bouboulis's motivation does not prevent the assertion of legislative immunity.  However, "[d]iscretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to [legislative] immunity, do not give rise to

immunity." Harhay v. Ellington Bd. of Educ., 323 F.3d 206, 210-11 (2d Cir. 2003). Acts are not "quintessentially legislative" when they involve the resolution of a single individual's employment situation. Id. at 211. The Selectboard's vote dealt specifically with Martin's continued employment. Therefore, under Harhay, legislative immunity does not apply.

Bouboulis argues that her actions were within the sphere of legitimate legislative activity because Vermont law classifies termination hearings as legislative acts. The Selectboard is granted the power to remove police officers under 24 V.S.A. § 1932, which states that "the *legislative body* shall have the power by majority to remove said officer." (emphasis added). The hearing had many characteristics of a legislative act: it was conducted by a legislative body and a majority vote of the legislative body was required. However, the Court is constrained by Harhay, and, while this is seemingly a legislative act, it is not entitled to legislative immunity because it involved a discretionary personnel decision. Harhay has spoken clearly to say that when a decision is vested in a legislative body, the decision is not always "quintessentially legislative".

Therefore, Bouboulis is not entitled to legislative immunity.

Bouboulis cites Berlickij in challenging the inapplicability of legislative immunity to employment decisions.  248 F. Supp. 2d at 342-43.  Berlickij held that town Selectboard members were entitled to immunity for terminating the town assessor position.  Id.  However, in Berlickij the court stressed that the board was terminating a position.  Id.  Terminating a position bears "the hallmarks of traditional legislative activity", reflecting a "discretionary, policymaking decision implicating the budgetary priorities of the town."  Id. at 343 (citing Bogan, 523 U.S. at 55-56).  Terminating an employee does not involve policy decisions and budget priorities in the same way terminating a position does.  See Bogan, 523 U.S. at 55 ("[T]he termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.")  Berlickij is distinguishable because terminating a particular employee does not bear the same hallmarks of traditional legislative activity.

III. Conclusion

    For the reasons stated above I recommend that Bouboulis's motion for judgment on the pleadings be DENIED.

    Dated at Burlington, in the District of Vermont, this $\underline{2^{nd}}$ day of September, 2008.

                                        <u>/s/ Jerome J. Niedermeier</u>
                                            Jerome J. Niedermeier
                                    United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).